UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALWIN MANUFACTURING CO.,

        Plaintiff,

v.                                                                         Case No. 08-C-451

GLOBAL PLASTICS, et al.,

        Defendants.

**DECISION AND ORDER**

      Alwin Manufacturing Company, Inc. brought this lawsuit against Global Plastics and others for infringement of Alwin's patent, No. 6,032,898, which teaches a product that dispenses paper towels. Defendants have filed a motion for summary judgment on the question of infringement. Although the Court has not yet construed the claim terms in a *Markman* hearing, Defendants assert that for present purposes only a single term needs to be construed. If the Court adopts Defendants' proposed construction, summary judgment can be entered in their favor because none of the accused products meet the claim limitation at issue. Although I agree with Defendants that the undisputed facts show no literal infringement, I am unable to conclude as a matter of law that there is no infringement under the doctrine of equivalents. Accordingly, the motion for summary judgment will be granted in part and denied in part.

**I. Claim Terms**

      Both Plaintiff's and Defendants' paper towel dispensers are the kind commonly found in public bathrooms. The parties have ably managed to narrow the issue such that extended discussion

of the inner workings of the '898 patent is not required. Instead, what's at issue is the feature the parties call the "push bar" – the bar at the bottom of the dispensers that users push to obtain a sheet of paper towel.[1] The '898 patent describes a push bar mounted on the housing of the invention "extending outwardly of said housing and **across substantially the entire housing** . . ." ('898 patent, col. 8, ll. 27-29.)[2] Alwin's machines (as well as those shown in the figures of the patent) have a push bar that extends virtually the entire length of the housing. In other words, Alwin's push bar is essentially the same width as the face of the dispenser itself.

The accused products, however, do not have push bars that extend the full width of the housing. Depending on how one measures their width, the Defendants' products have push bars that extend between roughly two-thirds to three-fourths of the face of the dispensers. For example, the Global Plastics HF108-02 model is some 11.7 inches wide, and its push bar is 7.2 inches wide. Thus, the push bar extends about 61.5% of that model's width. Other models have similar proportions. (Friesen Decl., Exs. E, F.) Alwin has used slightly different measurements for the accused devices (measuring the width of the dispenser's housing at its narrowest), which results in push bar measurements of the accused devices at 77% of the housing, for the 108-01 model, and 68% for the 108-02 model.

The Defendants argue that because the push bars of the accused products extend no more than roughly three-fourths of the width of the dispenser (even using Alwin's measurements, which they dispute), they do not extend "across substantially the entire housing." In their view, something

---

[1]The '898 patent does not use the term "push bar" – it calls it an actuator means. For present purposes, I find the term "push bar" easier and more descriptive.

[2]The patent is found at the declaration of Richard Marschall, Ex. A.

that extends across substantially the entire housing must extend all or nearly all of the way. Alwin's view of the key phrase, of course, is more expansive. In its view, something can extend across substantially the entire housing if it extends more than half of the span.

The Defendants' argument is based on the claim language as well as the prosecution history. On its face, the claim language itself is certainly suggestive of a wide push bar. Clearly the push bar need not extend the *entire* span, or the claim would have been written to say so. But to say that it needs to extend "substantially" across the "entire" housing suggests that the push bar should extend nearly the entire width of the housing. To say something extends substantially across a given span means that, in substance, the span is covered – either completely or nearly so. It is close enough (think of the phrase "substantial compliance") that the extent of its incompleteness is insignificant. This interpretation meets with common usage and understanding of the terms. In common parlance, for example, if one said that a football player returned a kick substantially across the entire field, no one would think he returned the kick fifty-one yards, or even eighty. Instead, one would expect that he came up only a few yards – maybe three, maybe eight – short.

When the term "substantially" is linked to "entire," the Defendants' position becomes that much stronger. The claim tells us that the push bar extends not just substantially across the housing, but substantially across the *entire* housing. This underscores that we are not talking about something that might extend half of the way; instead, it is the *entire* housing that is the yardstick, and the span is substantially all of that entire length. Plaintiff argues that "entire" is essentially a redundancy, a term that is meaningless since something that extends "across the housing" necessarily extends across the *entire* housing. The term, in its view, does not add anything. Yet in common usage the term "entire" is used to accentuate the extent or scope of the act. If a child brags

3

that he ate the "entire ice cream cone" or threw a ball across the "entire field," he is trying to impress you with how much he accomplished. The use of the word "entire" is a deliberate effort to exaggerate that point – to say that, lest there be any doubt, the deed was not *mostly* accomplished but *entirely* accomplished. Similarly, the claim's use of "entire" underscores the point that the push bar is to extend all or almost all of the way across the housing.

This reading is bolstered by the Federal Circuit's decision in *York Prods., Inc. v. Cent. Tractor Farm & Family Cir.,* 99 F.3d 1568 (Fed. Cir. 1996). There, the patent described cargo liners with "ridge members" that were to protrude "in a common plane from the liner sidewall portions to at least a substantial[] part of the entire height thereof." *Id.* at 1572. The district court found that the phrase "substantially the entire height thereof" "means that the ridges *must cover nearly the entire length of the sidewall*. . . . A projection in the sidewall that does not span nearly the entire distance from the top to the bottom of the sidewall does not meet this limitation." *Id.* (italics added). The Federal Circuit affirmed:

> In this case, the patent discloses no novel uses of claim words. Ordinarily, therefore, "substantially" means "considerable in . . . extent,"American Heritage Dictionary Second College Edition 1213 (2d ed. 1982), or "largely but not wholly that which is specified," Webster's Ninth New Collegiate Dictionary 1176 (9th ed. 1983). Thus, the modifier "substantially" conveys that the ridge members extend over most of the "entire height" of the sidewall portions. The district court's language captured well this meaning: "[T]he ridge member ... must extend from near the bottom to near the top of the liner sidewall."

*Id.* at 1572-73.

The Federal Circuit was further convinced by the fact that the drawings in the patent's specification showed ridges that spanned the entire length of the sidewalls. "The embodiments disclosed in the '876 patent and its drawings show ridge members extending nearly the entire height

4

of the sidewall. At no point does the specification suggest that 'at least a substantial part of the entire height [of the sidewall]' means less than the entire height of the sidewall." *Id.* at 1573. The same holds true here. To the extent they show it at all, the embodiments depicted in the '898 patent all show a push bar extending the entirety of the face of the dispenser. (Marschall Decl., Ex. A at 2.) Moreover, the specification even highlights the width of the push bar as a desirable feature: "Another important feature of the present invention is the fact that the *push bar 66 extends entirely across the width of the housing* 21. This configuration of the push bar 66 permits easy use of the dispenser 20 by both left handed and right handed individuals . . ." ('898 patent, col. 7 ll. 14-18) (italics added). Thus, not only does the rest of the patent show that the push bar was to extend the entirety of the housing, it touts that feature – the longer the push bar, the easier it is to use for both left- and right-handers. (Other dispensers, whose actuators are positioned on the right of the housing, are difficult to use for left-handers.) Although specifications cannot be used to limit claim terms, they may, as in *York*, shed light on the manner in which those terms are used. Here, as in *York*, the claim language requires that the push bar extend nearly the entirety of the dispenser's housing.

Even if the claim language does not support its view that a two-thirds span could meet the "substantially the entire" limitation, Alwin argues that the prosecution history does. In particular, it highlights a dialogue between its patent counsel and the patent examiner. In denying the claims, the examiner noted that a Canadian patent disclosed a similar structure, including an actuator means that extended across substantially the entire housing of the dispenser. He believed the actuator means extended in that fashion because "it can be seen that [the] actuator means (18) extends for more than half the distance along the side of the housing." (Marschall Aff., Ex. B at 6.) In Alwin's

5

view, this shows that the PTO had already taken the view that the phrase at issue means the push bar must only extend "more than half" of the distance.

The context of the examiner's remark demonstrates, however, that the examiner was not intending to define the phrase at all. He was commenting on prior art, and in that context he apparently used his own short-hand proprietary definition for "substantially the entire housing." The utterances of an examiner in such a context cannot limit the patent's own clear terms. Although a patentee's clear disavowal of material during the prosecution history can limit the terms of a claim, the public is not expected to paw through patent file wrappers to divine idiosyncratic word meanings used offhandedly by patent examiners.

Moreover, the context of the examiner's statement shows that he anticipated the very argument now raised by the Defendants. Specifically, he stated, "If it is argued that the actuator means does not extend across 'substantially the entire housing,' then it would have been an obvious matter of design choice to provide the actuator means to extend across 'substantially the entire housing'. . ." If the examiner actually believed that extending across substantially the entire housing simply meant "more than half," he would have said so at this point. Instead, he accepted the possibility that the prior art's push bar did *not* extend far enough, and concluded in that event it would have been obvious to add length to the existing art. In effect, the examiner essentially conceded the premise and then rejected the argument on other grounds. The issue of what constitutes "substantially the entire housing" was simply not resolved by the examiner and remained an open question. There is, in short, no reading of his statements that would allow a reasonable reader to believe the examiner had uttered any binding statement regarding the PTO's position on what "substantially the entire housing" meant in that context.

6

Under the circumstances presented here, granting summary judgment on literal infringement does not require an explicit claim construction. Indeed, Alwin has cautioned against attempts to impose numerical limits on phrases like "substantially all." Thus, I need not decide whether the phrase at issue means 88% or 95%; it is enough to say that the accused products in this case, whose push bars extend no more than 75% of the housing, do not use actuator means that extend across substantially the entire housing. Accordingly, I conclude as a matter of law that the accused products do not literally infringe the '898 patent.

**II. Doctrine of Equivalents**

Plaintiff also alleges that even if there is no literal infringement, Defendants' products perform the same function, to achieve the same result, as the invention shown in the '898 patent. Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 21 (1997). In other words, according to Alwin the accused products achieve the same result in the same way even though their push bars are a few inches shorter.

The object of the invention is not complicated. As described above, the push bar must be wide enough so that both left- and right-handed people can comfortably depress it to obtain a paper towel. Alwin argues that this result can be achieved whether the push bar is 75% of the dispenser's width or 100%.

7

The Defendants' principal argument is that Alwin is estopped from asserting equivalence because during the prosecution history it deliberately surrendered any actuator means lengths less than 83%. Central to Defendants' argument is a prior art reference called Grunwald. The examiner told Alwin that the Grunwald patent disclosed a substantially similar dispenser including an actuator means that extends outwardly of the housing across substantially the entire housing. (Marschall Decl., Ex. B. at 5.) That patent, according to its figure 3, shows an actuator means that extends approximately 83% (by the Defendants' measurement) of the width of the housing.

In response to the examiner, Alwin stated that "there is no suggestion that the actuator mechanism 35 [Grunwald] extends across substantially the entire width of the housing as is now required by the claims." (Marschall Decl., Ex. C. at 4.) By so stating, Alwin was informing the examiner (and the public) that the Grunwald push bar's 83% width was *not* sufficient to cover "substantially the entire width" of the housing. Thus, Defendants maintain, Alwin is on record as saying that 83% is not enough. If it wasn't enough for the Grunwald patent, Alwin cannot now claim that the accused products, whose push bars span less than Grunwald's, are somehow the equivalent of Alwin's.

Although this argument has a superficial appeal, there are a number of problems with it. First, prosecution history estoppel requires a clear and unequivocal surrender of material, and it does not appear that occurred here. The "83%" figure was never discussed by Alwin or the examiner – it arises only now from the Defendants' own measurements of a single figure of the Grunwald patent. The actual length of the Grunwald push bar was never discussed, and there is no indication that either the examiner or Alwin attempted to measure it or found its length – based upon the depiction in figure 3 – to be dispositive of anything. Thus, any member of the public perusing the

8

prosecution history of the '898 patent would not conclude that Alwin explicitly surrendered the argument that push bars extending 83% or less of the dispenser were the equivalent of those that spanned substantially the entire width. To reach that conclusion requires a series of leaps, inferences and measurements that were not evidenced in the prosecution history, and thus I conclude that reliance on a single figure from prior art is not enough, under these circumstances, to find an explicit disavowal of material.

More importantly, Alwin points out that the figure relied on by the Defendants does not accurately portray the Grunwald invention, at least as far as the push bar is concerned. The figure Defendants rely on suggests that the push bar is a long bar similar to those at issue here, but in reality the Grunwald invention "hid" much of the push bar behind the facing of the dispenser. What we are calling the push bar was in fact a "swinging bar" on the Grunwald machine, and only a small portion of it was touchable. Users of the Grunwald device had to reach into a small window on the face of the dispenser to reach the push bar, and as such the operative portion of the push bar (the part users can touch) extends only a few inches – far less than half of the face of the invention. Thus, Grunwald's push bar is not an apples-to-apples comparison. It is the touchable part of the push bar (actuator means) that is at issue in this case, as its width across most of the outside of the housing (rather than being hidden *within* the housing) is what makes it useful. As such, the Defendants' reliance on the 83% span of the Grunwald "swinging bar" is not dispositive of anything within the prosecution history relating to the kind of push bar at issue here. To the extent there was a push bar in Grunwald, it was far shorter than 83% of the housing's width. Accordingly, I am unable to find that Alwin's discussions about the Grunwald prior art disavowed any territory with respect to the length of its own push bar. At most, all it was arguing was that the operative part of

9

Grunwald's push bar – which was very small – did not extend across substantially the entire housing.

The Defendants also argue that the doctrine of equivalents cannot apply here because it would essentially wipe out the explicit "substantially the entire housing" limitation in Alwin's patent. That is, a patentee should not be allowed to draft narrow claim language and then widen the scope of his claim through the doctrine of equivalents. After all, it is the claims, which typically are carefully drafted by expert attorneys, that provide the primary notice of the invention to the public, and an overly generous application of the doctrine of equivalents could undermine the claims themselves. "There can be no denying that the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 29 (1997).

The Supreme Court addressed this tension – which another court referred to as "one of the many difficult dichotomies that lurk in the lacunae of patent law"[3] – in *Warner-Jenkinson*. In upholding the viability of the doctrine of equivalents, the Court was careful to limit its application in two respects. First, it noted that the doctrine is to be applied to each element of the claims, not to the invention as a whole. Second, relevant here, it concluded that the doctrine of equivalents (as its name suggests) is intended to encompass equivalent elements – substitutes, essentially – rather than elements that effectively widen the scope of what was claimed in the patent. "[A] distinction can be drawn that is not too esoteric between substitution of an equivalent for a component in an invention and enlarging the metes and bounds of the invention beyond what is claimed." *Id.* at 29 (quoting 62 F.3d 1512, 1573 (Fed. Cir. 1995)(Nies, J., dissenting)).

---

[3]*Laitram Corp. v. Cambridge Wire Cloth Co.,* 863 F.2d 855, 856 (Fed. Cir. 1988)

10

The Defendants portray this case as an attempt by Alwin to introduce elements that *broaden* the claim terms rather than elements that are equivalent substitutes for those elements. Suppose that this court would conclude that "substantially the entire housing" means about 95% or more of the housing's width. In the Defendants' view, to then find that accused products whose push bars extend 75% of the width are the "equivalent" of 95% would impermissibly "enlarge[] the metes and bounds of the invention beyond what is claimed." *Id.*

Defendants liken this case to *Moore U.S.A., Inc. v. Standard Register Co.,* 229 F.3d 1091 (Fed. Cir. 2000). There, the patent in question (a business form designed for printers) provided that certain longitudinal adhesive strips were to extend a "majority of the lengths of said longitudinal marginal portions." *Id.* at 1095. The adhesive strips on the accused products extended only 48% of the lengths of the marginal portions, and thus the plaintiff had to concede that there was no literal infringement (48% being less than a majority). Nevertheless, the plaintiff (Moore) asserted infringement under the doctrine of equivalents. The district court disagreed, finding that applying the doctrine of equivalents would vitiate the clear claim limitation. On appeal, Moore reprised its argument:

> Moore further contends that its desired scope of equivalents for claim 1 would not vitiate the "majority of the lengths" limitation. Moore characterizes the critical issue as whether first and second longitudinal strips of adhesive that extend "about 48%" of the length of the longitudinal margins are insubstantially different from strips that extend "50.001%" of the length of such margins. Moore argues that there is a genuine issue of material fact as to whether "about 48%" is equivalent to "50.001%" ( e.g., by performing substantially the same function, in substantially the same way, to achieve substantially the same result), which precludes summary judgment of non-infringement.

*Id.* at 1106.

11

The Federal Circuit affirmed. In doing so, it rejected Moore's attempts to equate 48% with a majority, even though the difference was in actuality quite negligible.

> In this case, we hold that the applicant's use of the term "majority" is not entitled to a scope of equivalents covering a minority for at least two reasons. First, to allow what is undisputedly a minority (i.e., 47.8%) to be equivalent to a majority would vitiate the requirement that the "first and second longitudinal strips of adhesive . . . extend the majority of the lengths of said longitudinal marginal portions." If a minority could be equivalent to a majority, this limitation would hardly be necessary, since the immediately preceding requirement of a "first and second longitudinal strips of adhesive disposed in said first and second longitudinal marginal portions, respectively, of said first face" would suffice. Second, it would defy logic to conclude that a minority-the very antithesis of a majority-could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise.

*Id.*

For its part, Alwin argues that this case is more like *Laitram Corp. v. Cambridge Wire Cloth Co.,* 863 F.2d 855 (Fed. Cir. 1988). There, the Federal Circuit applied the doctrine of equivalents when the patent contained a limitation requiring that "said link ends being dimensioned and spaced apart by a distance *slightly greater than said width*." The Court assumed that "slightly greater" meant spacing of 6% greater than the width (as in the patentee's product), but found equivalence even though the spacing in the accused products was 35% greater than the width. In so concluding, the Federal Circuit found that the key question was "whether the 'alteration' [the increase in spacing in the accused product] left the spacing such that it would still achieve the 'minimize bending/maximize shear' purpose" of the limitation. *Id.* at 859. If the wider spacing continues to meet that purposive criterion, then (given that the rest of the accused product was essentially identical) the accused device is an equivalent. The court found that the accused device did meet that essential criterion. In fact, the defendant did not even argue the point in the court of appeals:

12

"nowhere does CWC suggest, nor does it show any basis for finding, that CAM-CLEAN II does not perform 'substantially the same function in substantially the same way to obtain substantially the same result.'" *Id.* at 860. And, given that there was no evidence in the record from the district court that the key criterion was not essentially met in the same way by the accused product, the Federal Circuit reversed and concluded that the doctrine of equivalents should apply:

> From the absence of any finding that CAM-CLEAN II did not minimize bending and maximize shear, and from the district court's uncontested finding that the "difference is admittedly small at working loads", and from the district court's uncontested finding that CAM-CLEAN II, even at extraordinary loads, is only "less resistant to bending and elongation forces", and from the district court's effectively uncontested finding that "the belt is not, at operating load significantly weaker," and from CWC's admission that CAM-CLEAN I and II are interchangeable and identically warranted, it can only be concluded that in CAM-CLEAN II bending is minimized and shear is maximized.

*Id.* at 861.

Although the issue is a close one, I conclude the question of equivalence is best left to a jury to decide. It is true that the issue here resembles *Moore* in many respects. If "majority" cannot mean "minority," then how could "substantially all of the entire housing" mean anything *less* than substantially all of the entire housing? The critical distinction is that in *Moore* the two terms were essentially *opposites* – as that court ruled, it would "defy logic" to conclude that something spanning the minority of a distance was equivalent to something spanning the majority. 229 F.3d at 1106. Given the dichotomy between what was claimed and the accused product, a court could readily rule as a matter of law (albeit over a dissent) that the doctrine of equivalents could not apply. But here, we are dealing with a sliding scale, a continuum of possible lengths of a push bar: it does not "defy logic" to conclude that, for example, push bars that extend 75% of the housing are the equivalent

13

of those that span 95% of the housing. Rather than a clear-cut linguistic battle between majority and minority, we have the far murkier debate about how much is "substantially all."

Finding that application of the doctrine of equivalents would vitiate a claim limitation is tantamount to concluding that no reasonable jury could find equivalence. *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 469 F.3d 1005, 1017 (Fed. Cir. 2006) ("[a] holding that the doctrine of equivalents cannot be applied to an accused device because it 'vitiates' a claim limitation is nothing more than a conclusion that the evidence is such that no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim.") As noted above, the court in *Moore* could find vitiation because the claim term ("majority") had a clear meaning that was not met by the accused products. But here, because the question is one of degree, it requires an assessment of the evidence. The Defendants have not provided any evidence that, for example, push bars that extend across 75% of the housing do not perform equivalently to push bars that extend the entire housing. It might be that its products differ significantly in that key criterion – for example, that push bars might lose their usefulness as they get shorter – but I am unable to conclude as a matter of law that no reasonably jury could find them equivalents.

This is borne out by other cases. The Federal Circuit made the same distinction in *U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.,* 505 F.3d 1371, 1379 (Fed. Cir. 2007). Discussing *Moore,* the court noted that "[e]ven though the term "majority" means a quantity greater than 50% and less than or equal to 100%, holding 47.8% to be equivalent to a majority changes the character of the claim limitation in a way that merely broadening a range need not." *Id.* That is, it is one thing to broaden a range set forth in a patent, but it is quite another to allow claim meanings to be changed

14

to incorporate their *opposites*.[4] Thus, in *Iwasaki,* the court reversed the district court and remanded so the court could determine whether the accused products were equivalent, even though the accused products (lamps) did not meet the specific patent requirement that "at least one of the halogens Cl, Br or I is present in a quantity between $10^{-6}$ and $10^{-4}$ μmol/mm$^3$." *Id.* at 1373. Similarly, in *Warner-Jenkinson* the Supreme Court found that the patent's use of a lower limit of 6.0 pH did not preclude use of the doctrine of equivalents. 520 U.S. at 32. In other words, a patentee would not be barred (it would be a jury question) from asserting that an accused product using a pH *under* 6.0 was the equivalent of its patent, which explicitly specified a lower limit of 6.0.

This case is more akin to the cases allowing use of the doctrine of equivalents when an accused products employs an element that is outside the specific range described in the patent. If the doctrine may be used even when an accused product exceeds a numerical boundary specified in the patent (e.g., a pH of 6.0), it follows that it may be used when the boundary described in the patent is even less clear, as in "substantially the entire housing." *Moore* and other cases present a different scenario, one in which use of the doctrine of equivalents would allow expansion of the claim terms into territory that was specifically disclaimed in the patent itself. White cannot mean black, and up cannot mean down. *See, e.g., Asyst Technologies, Inc. v. Emtrak, Inc.,* 402 F.3d 1188, 1195 (Fed. Cir. 2005) ("To hold that "unmounted" is equivalent to "mounted" would effectively read the "mounted on" limitation out of the patent."); *Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.,* 291 F.3d 1317, 1319 (Fed.Cir. 2002) (no reasonable jury could conclude that a patent describing port as lying "between" two plugs was infringed when the accused port was

---

[4]There is something admittedly artificial about the distinction. The dissent in *Moore* clearly would have not made the distinction at all and would have sent the matter to a jury.

15

located elsewhere); *Bicon, Inc. v. Straumann Co.,* 2004 WL 2387277, *6 (D. Mass. 2004) ("a concave surface is the opposite of, and thus cannot be equivalent to, a convex surface.") These cases stand for the principle that the doctrine of equivalents cannot recapture elements that are contradicted by the very claim terms used – majority vs. minority, mounted vs. unmounted, concave vs. convex, etc. But none of them supports a finding of vitiation (i.e., taking the case away from the jury) when the elements in the accused products differ merely in degree and the benchmark claim term (here, "substantially all of the entire housing") would not be contradicted by a finding that something close was an equivalent. As such, I conclude it would be error to decide, as matter of law, that the accused products are not the equivalents of the invention described in the Plaintiff's patent.

**III. Conclusion**

For the reasons given above, I conclude that the accused products do not literally infringe. The Defendants' motion for summary judgment is **GRANTED** on that point. However, I am unable to conclude as a matter of law that the accused products are not the equivalents of the invention described in the patent. Accordingly, the Defendants' motion for summary judgment is **DENIED** as to the doctrine of equivalents. The motion to file under seal [Dkt. # 63] is **GRANTED**. The stay of discovery is lifted. The clerk will set the matter on for a telephonic status conference to determine the course the parties wish to take from here.

**SO ORDERED** this ___21st___ day of April, 2009.

                                                                s/ William C. Griesbach
                                                                William C. Griesbach
                                                                United States District Judge